

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

EMR:GB
F. # 2025R00355

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

December 10, 2025

By E-mail and ECF

Honorable Pamela K. Chen
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:    United States v. Bermudez et al.
       Criminal Docket No. 25-361 (PKC)

Dear Judge Chen:

The government respectfully submits this letter pursuant to Title 18, United States Code, Section 3145(a)[1] to appeal from the December 5, 2025 order by the Honorable Michael Berg, United States Magistrate Judge, Southern District of California, releasing pretrial the defendant David Brilhante, also known as "Knight" and "CS:GO," in the above-referenced matter.[2]  Brilhante is charged in an Indictment in the above-captioned case with various offenses related to the sexual exploitation of children.

---

[1]    Under 18 U.S.C. § 3145(a), "If a person is ordered released by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court . . . the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release; and . . . The motion shall be determined promptly."  The Second Circuit has instructed that "for purposes of 18 U.S.C. § 3145, the court having original jurisdiction over the offense means the court in the district in which the prosecution is pending, not the court in which the magistrate judge sits.  United States v. El Edwy, 272 F.3d 149, 154 (2d Cir. 2001). Accordingly, this appeal is properly before the Court.

[2]    The government has not yet received the transcript from the December 5, 2025 detention hearing before Magistrate Judge Berg but will provide it to Court and defense counsel as soon as it is available.

I. Procedural Background

On November 18, 2025, a grand jury sitting in the Eastern District of New York returned an indictment charging the defendant and at least four co-defendants with one count of engaging in a child exploitation enterprise, in violation of Title 18, United States Code, Section 2252A(g); one count of conspiracy to sexually exploit children, in violation of Title 18, United States Code, Sections 2251(a) and 2251(e); and one count of conspiracy to receive and distribute child pornography, in violation of Title 18, United States Code, Sections 2252(a)(2) and 2252(b)(1).  ECF No. 8.

The Defendant was subsequently arrested on those charges in San Diego, California.  He made his initial appearance in the Southern District of California on December 3, 2025.  Pretrial Services for the Southern District of California evaluated Brilhante and determined that based on the nature of the instant offense and the charges having involved children and use of a computer, as well as other factors, that no condition or combination of conditions would reasonably assure the appearance of the defendant as required and the safety of the community. Accordingly, Pretrial Services recommended the defendant be detained.  A detention hearing was subsequently held on September 5, 2025, before Magistrate Judge Berg and, over the government's objection, the magistrate judge granted bail on a $750,000 property bond and imposed certain conditions of release, including home detention and computer restrictions.  ECF Nos. 7 & 8, 3:25-mj-6668 (S.D. Cal.).  Following this, the government orally moved to stay the defendant's release pending appeal by the government.  Magistrate Judge Berg granted that request, and absent further action, the release will be effectuated December 10, 2025.

The government hereby appeals that release order.  The decision to release the defendant was erroneous.  The government has established that he is a danger to the community and victims/witnesses in this case as well as a risk of flight.  Because the defendant is a danger and a flight risk, and no conditions of release can ensure the community's safety or the defendant's appearance in this Court, a permanent order of detention is appropriate.

Notably, because the charged defendants were located all over the United States on the day of their arrest, the defendant's only co-defendant to be arrested and arraigned in this district to date is Hector Bermudez.[3]  After a detention hearing held on December 4, 2025, Chief Magistrate Judge Vera M. Scanlon detained Bermudez, holding that there were no conditions or

---

[3] Co-defendant Zachary Dosch was ordered detained in the District of New Mexico and was committed to the Eastern District of New York.  See ECF Nos. 7, 9, 10; 1:25-mj-4991 (D.N.M.).  Co-defendant Camden Rodriguez is scheduled for a detention hearing today, December 10, 2025.  See ECF No. 8; 1:25-mj-313 (D. Colo.).  Co-defendant Rumaldo Valdez is currently detained awaiting sentencing following his plea of guilty to possession of child pornography in the District of Hawaii.  See ECF Nos. 12 & 23, 1:25-cr-112 (D. Haw.).

combination of conditions that could assure the safety of the community or his appearance in court.[4]  ECF No. 19.

## II. Legal Standard

A district court reviews de novo a magistrate judge's decision to release or detain a defendant pending trial.  See United States v. Esposito, 309 F.Supp.3d 24, 30 (S.D.N.Y. 2018) (Marrero, J.) (citing United States v. Leon, 766 F.2d 77, 80 (2d Cir 1985)).  A district court undertakes a two-step inquiry when evaluating an application for bail.  See 18 U.S.C. § 3142(e). First, the Court must determine whether the Government has established the defendant presents a danger to the community or a risk of flight.  See 18 U.S.C. § 3142(e) (emphasis added).  Second, if the Government meets its initial burden, the Court must determine whether no conditions or combination of conditions of release could reasonably assure the defendant will not flee or will not endanger others.  See United States v. Sabhnani, 493 F.3d 63, 75 (2d Cir. 2007).  In making that determination, a court must consider four factors in the detention analysis whether for risk of flight or dangerousness: (1) the nature and circumstances of the offense charged; (2) the history and characteristics of the defendant; (3) the seriousness of the danger posed by the defendant's release; and (4) the evidence of the defendant's guilt.  See id.; 18 U.S.C. § 3142(g).

The Government must support a finding of dangerousness by clear and convincing evidence.  See United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995).  A finding of risk of flight must only be supported by a preponderance of the evidence.  See United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987); see also United States v. Abuhamra, 389 F.3d 309, 320 n.7 (2d Cir. 2004).

Conspiracy to produce, distribute, and receive child pornography, as well as the multiple other child exploitation-related counts charged here, carry a statutory presumption under 18 U.S.C. § 3142(e)(3) that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community."  See 18 U.S.C. § 3142(e)(3)(E) (presumption for offenses involving minor victims under 18 U.S.C. §§ 2251 and 2252(a)(2)).

To rebut this statutory presumption, the defendant must come "forward with evidence that he does not pose a danger to the community or a risk of flight."  United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001) (per curiam).  If this limited burden of production is satisfied, the government retains the burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community and by a preponderance of evidence that the defendant present a risk of flight.  Id.

To determine whether the presumptions of dangerousness and flight are rebutted by a defendant, the Court must consider:

(1)    the nature and circumstances of the crime charged;

---

[4] Bermudez has now appealed that decision, largely in light of his significant health concerns which he also raised before Judge Scanlon; that appeal is pending.  ECF No. 24.

(2)     the weight of the evidence against the defendant;

(3)     the history and characteristics of the defendant, including family ties, employment, financial resources, community ties, drug or alcohol abuse history and past conduct; and

(4)     the nature and seriousness of the danger to the community or to an individual that would be posed by release.

18 U.S.C. § 3142(g).  Once a defendant has met his burden of production relating to danger to the community and risk of flight, the presumption in favor of detention does not disappear entirely but remains a factor for the court to consider.  Mercedes, 254 F.3d at 436.

III.   The Defendant's Abuse of Children and Participation in a Child Exploitation Enterprise[5]

Greggy's Cult [6] was an Internet-based group that the defendant and his co-defendants operated between 2019 and 2021 throughout the United States.  The defendant engaged in coordinated exploitation minor victims across the country by, among other things, inducing them to produce child pornography.  Greggy's Cult operated on a series of related Discord servers (collectively the "Target Server").  The defendant and other members of Greggy's Cult found victims on Discord servers or on gaming platforms such as Roblox and Counter-Strike: Global Offensive.  On the Target Server, Greggy's Cult prolifically trafficked child pornography, sexually exploited minors and communicated interstate threats, including towards both minor and adult victims.  For example, the defendant and other members of Greggy's Cult convened on the Target Server and then directed minor victims, who had joined a live video call on either Discord or another video conferencing platform, to engage in sexually explicit or other degrading conduct.  The members of Greggy's Cult then captured "screenshots" or "screen recordings" of the sexually explicit conduct and shared it on other channels on the Target Server to other Discord servers and amongst themselves.

On at least one occasion, a co-defendant was in a live video call with a minor victim, directing the victim to engage in sexually explicit conduct on the call.  The co-defendant was simultaneously livestreaming the abuse to a wider audience, including Brilhante.  Because the co-defendant warned Brilhante that the minor victim would stop if the victim knew that Brilhante was observing the call, Brilhante gave his co-defendant directions for what wanted the victim to do on

---

[5] The government is permitted by the Second Circuit to supplement the evidence through a factual proffer in support of its motion for a permanent order of detention.  See United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000); United States v. Ferranti, 66 F. 3d 540, 542 (2d Cir. 1995).  As any proffered evidence seek only to articulate facts sufficient to justify detention, this evidence is not a complete statement of all of the evidence of which the government is aware or will seek to introduce at trial.

[6] "Greggy's Cult" is a precursor to "764," another online group that engaged in sadistic sexual exploitation and victimization of minors, including through the creation and distribution of child pornography.

the camera, which his co-defendant then instructed the victim to do.[7]  In this way, Brilhante worked with his co-conspirators to abuse children when he would not have been able to himself. The defendant and other members of Greggy's Cult also pressured minor victims to masturbate by inserting household objects into their genitals or anus and several minor victims compiled with these demands.

Investigation has revealed that Brilhante's role in the group included targeting younger girls online, convincing them to send him pictures of themselves, and manipulating these underage girls to send him explicit content.  Brilhante then edited the pictures and share them online to torment his young victims.

Throughout the charged time period, Brilhante was also the subject of three National Center of Missing and Exploited Children ("NCMEC") Cybertips.[8]  Those three reports show Brilhante using three different accounts (all variants of his "Knight" alias) to share an image of a minor who is approximately 6 to 10 years old sitting on a table wearing only a shirt that is pulled up, displaying the minor's erect penis.

IV.  Defendant's Ongoing Risk to Children

The defendant was also the subject of two more recent NCMEC Cybertips that showed that he continued his conduct even after Greggy's Cult disbanded.  Indeed, in June 2021, one of the co-defendants in this case, Zachary Dosch, was arrested and charged in the District of New Mexico with child exploitation offenses.  Greggy's Cult is believed to have disbanded at or shortly after that time.

Nevertheless, Brilhante continued his abuse of children.  In August 2024, NCMEC received a report from Snapchat regarding a user whom law enforcement identified as Brilhante.[9] Snapchat reported a conversation between Brilhante and a user who had identified themselves to Snapchat as a minor.  In the reported conversation, Brilhante told the minor that it is normal for her to "eat cum."  He told the minor "u love cum bc it's something for u to swallow."  The minor

---

[7] It appears Brilhante had previously directly communicated with this minor victim. During the recorded exploitation described here, the minor victim states that Brilhante had previously tried to get her to insert a household object "inside."

[8] NCMEC is a private, nonprofit entity dedicated to reducing and preventing the exploitation of children. Among its other functions, NCMEC serves as a clearinghouse and reporting center for issues relating to the exploitation, abuse, victimization, and abduction of children. In particular, NCMEC maintains a "CyberTipline," through which the public and electronic service providers—including certain internet, technology, and social-media companies—make reports concerning child exploitation offenses and other crimes against children.

[9] In addition to other connections to the account, during his post-arrest interview, after waiving his *Miranda* rights, Brilhante confirmed that the email associated with the reported Snapchat account was his.

called him weird, to which Brilhante responded "says the one who screenshotted the dick pic." During the conversation, Brilhante sent a picture of a penis to the minor.[10] This conversation is an example of Brilhante continuing to groom minors by encouraging sexual behavior and sending sexually explicit images.

Moreover, a review of financial records associated with Brilhante shows that he continues to engage in trafficking sexually explicit material through the above-described reported Snapchat account. For example, one note accompanying a transaction in November 2024 transaction read "snap:[Brilhante Snapchat account] for sextape." The records also show Brilhante calling other users "goodgirl" while requesting "nudes" in May 2025. In another transaction from September 2023, Brilhante asks "how much for an incall, 1 hour." An "incall" is a reference to a commercial sex encounter. Notably, following his arrest the defendant waived his *Miranda* rights and made a statement to law enforcement officers in which he admitted to having been banned from multiple financial accounts.

In April 2025, an anonymous tipster also reported ongoing conduct by former Greggy's Cult members to NCMEC. The tip was primarily focused on co-defendant Camden Rodriguez, but also contained allegations regarding "Knight," whom the tipster identified as "David." The tipster had familiarity with the conduct of Greggy's Cult, reporting that "oHare" (co-defendant Rodriguez), "Moist Nigerian" (co-defendant Dosch), "Knight" (Brilhante), and others were members of Greggy's Cult with the goal of "solicit[ing] and extort[ing] young children into hurting themselves, pets, and others in order to record them and create CSAM." The tipster also reported that Rodriguez was affiliated with "the groomings, slitting wrist, killing themselves, killing pets, receiving nudes from underage girls for sadistic purposes with 'Moist Nigerian,' 'Knight / David,'" and others.[11] The tipster further reported that "oHare and Knight are still up to their disgusting deeds."

All of this evidence together shows that Brilhante has continued to engage in child exploitation even after the charged conspiracy ended and as recently as April 2025.

V.   The Court Should Enter a Permanent Order of Detention

The nature and circumstances of the charged crimes and the weight of the evidence strongly support detention. The defendant is charged with three counts which involve the most serious federal crimes involving the repeated sexual exploitation of children. These offenses demonstrate a deliberate willingness to target vulnerable children, use deceptive and coercive tactics, and exploit technology to commit harm that is permanent, wide-reaching, and irrevocable. The nature of the charged conduct places this case squarely within the set of offenses for which

---

[10] Despite being an adult, Brilhante provided a fraudulent date of birth to Snapchat consistent with him being a minor. Accordingly, Snapchat flagged the image as potential child pornography. However, the penis appears consistent with an adult penis.

[11] Greggy's Cult, as charged in the indictment, did encourage victims to kill themselves; however, the undersigned is not aware of any victims having done so as a result of the group's actions. Similarly, the undersigned is aware that Greggy's Cult encouraged victims to engage in harm to pets but is not aware of any killing of pets.

6

pretrial detention is not merely permitted but strongly favored. Indeed, Congress has expressly determined that defendants charged with these offenses pose a heightened danger to the community and therefore created a rebuttable presumption of detention. See § 3142(e)(3)(E). Accordingly, the defendant bears the initial burden of showing that they are not a danger to the community or a flight risk. For the reasons set forth below, the defendant cannot sustain that burden.

### A. The Defendant Poses a Danger to the Community

The defendant poses an acute and ongoing danger to children and should be detained pending trial. The defendant has repeatedly exploited children and his conduct demonstrates a uniquely dangerous disregard for the safety and vulnerability of minors, which creates an acute risk of continued harm if released. The defendant persisted in his crimes even after he was put on notice of the minor victims' ages by the victims, comments from other Discord users, or discussion amongst him and his co-conspirators.

Child exploitation crimes like these often encompass predatory behavior, sophisticated methods of grooming or concealment, and a willingness to target those least able to protect themselves. According to one of the victims, that grooming process was Brilhante's specialty by gaining the trust of victims he was able to draw in to ultimately be exploited by Greggy's Cult. These factors indicate both a serious danger to the community and a high likelihood of recidivism, concerns that cannot reliably be mitigated by supervision or conditions of release. Indeed, the defendant used various aliases, Discord user and display names, email and other social media accounts to make it difficult for law enforcement to uncover their true identities. Because the defendant enjoyed anonymity for years, he was able to persist in his conduct even after Discord repeatedly removed his accounts or the Target Server from the platform; on those occasions, the defendant used variations of his aliases to continue to engage in his criminal content. For these reasons, pretrial detention is necessary to ensure the safety of children, including the minor victims that the defendant brazenly preyed on for years.

Moreover, the evidence in this case is overwhelming. It includes statements from multiple minor and adult victims, social media records, IP addresses, email accounts, as well as material obtained from Dosch and Valdez's electronic devices and homes which include dozens of videos of images of the sexual exploitation of children that unequivocally establish the defendant's guilt.

Finally, the defendant appears to continue to engage in the sexual exploitation of children as shown by the NCMEC Cybertips described above in which a tipster said that Brilhante is still offending, as well as the Snapchat Cybertip in which Brilhante sent a sexually explicit image to a purported minor and engaged in sexual conversation with that minor. Brilhante's financial transactions further corroborate his ongoing efforts to target children.

For all of these reasons, the government submits that the Court should enter a permanent order of detention against the defendant.

B.  The Defendant Presents a Serious Risk of Flight

The Court should also enter a permanent order of detention because the defendant poses a significant risk of flight.  The defendant's substantial sentencing exposure increases the incentive to flee and weighs heavily in favor of detention.  The offenses with which the defendant is charged carry significant penalties.  The child exploitation enterprise charge carries a statutory mandatory minimum of twenty years' imprisonment and a statutory maximum of life.  18 U.S.C. § 2252A(g).  The sexual exploitation of children conspiracy charge carries a statutory mandatory minimum of 15 years' imprisonment and a statutory maximum of 30 years.  18 U.S.C. § 2251(e). The Second Circuit has held that the possibility of a severe sentence is an important factor in assessing flight risk.  See United States v. Jackson, 823 F.2d 4, 7 (2d Cir. 1987); see also United States v. Cisneros, 328 F.3d 610, 618 (10th Cir. 2003) (defendant was a flight risk because her knowledge of the seriousness of the charges against her gave her a strong incentive to abscond); United States v. Townsend, 897 F.2d 989, 995 (9th Cir. 1990) ("Facing the much graver penalties possible under the present indictment, the defendants have an even greater incentive to consider flight.").

VI.  The Proposed Bail Package is Inadequate

Although the government submits that no package would be sufficient to protect the community and ensure the defendant's appearance in this Court, the instant package is insufficient to accomplish these goals.  The current bail package would release the defendant on home detention, along with a $750,000 secured bond.  However, the bond is secured by property owned by the defendant's family rather than by the defendant himself, which lessens the incentive for the defendant to comply.

Nor does the addition of home detention and location monitoring change the calculus.  The Second Circuit has viewed home detention and electronic monitoring as insufficient to protect the community against high-risk individuals. In United States v. Millan, the Second Circuit held that:

> Home detention and electronic monitoring at best elaborately replicate a detention facility without the confidence of security such a facility instills. If the government does not provide staff to monitor compliance extensively, protection of the community would be left largely to the word of [the defendants] that [they] will obey the conditions.

4 F.3d 1038, 1049 (2d Cir. 1993) (internal citations and quotation marks omitted); see also United States v. Orena, 986 F.2d 628, 632 (2d Cir. 1993) ("electronic surveillance systems can be circumvented by the wonders of science and of sophisticated electronic technology") (internal citation and quotation marks omitted); see United States v. Dono, 275F. App'x 35, 37 (2d Cir. 2008) (noting that the idea that "specified conditions of bail protect the public more than detention is flawed") (quoting Orena, 986 F.2d at 632).

Notably, home detention here would release the defendant back to the home where he committed these offenses.  Concerningly, during the execution of a search warrant on that

8

residence, Brilhante's father told law enforcement, in sum and substance, that he knew Brilhante was into some "creepy shit on the internet" but that he didn't know "it was this creepy." This statement shows a knowledge of and inability to regulate Brilhante's online conduct. Indeed, Brilhante engaged in all his criminal conduct in the family residence, at the same location and with the same people to whom he is now proposing that he be released. Access to a single unmonitored device connected to the internet is all that the defendant would need to continue to exploit and abuse minors. This is a crime that can be and was committed from the comfort of the defendant's home. No condition or combination of conditions can alleviate that risk.

## VII. Conclusion

For the foregoing reasons, the government respectfully submits that no conditions or combinations of conditions are sufficient to ensure the safety of the community and the victims and witnesses in this case. Accordingly, the government respectfully requests that the Court vacate Magistrate Judge Berg's release order and enter a permanent order of detention. In the interim, the government respectfully requests the Court further stay Magistrate Judge Berg's release order, which is set to take effect December 10, 2025, pending a final resolution by the Court.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:    /s/_____
       Gwendelynn Bills
       Trial Attorney
       Child Exploitation & Obscenity Section
       (202) 616-2572

cc:    Defense Counsel (by E-mail)
       Clerk of Court (by ECF)

9